Filed
D.C. Superior Court
ANACOSTIA LAW OFFICE
7910 WOODMONT AVENUE S410
BETHESDA, MD 20614
LITIGATION FORM NO. 434756
03/11/2019 21:35PM
Clerk of the Court

## SUPERIOR COURT OF DISTRICT OF COLUMBIA
### CIVIL DIVISION

MAMIE PRESTON,

    3642 13ᵗʰ Street, NW
    Washington, DC 20010

*Plaintiff,*

v.

FUAD TODD RAGIMOV,
    *Serve on*:
    Fuad T. Ragimov
    (a.k.a Todd Ragimov)
    1716 Strine Drive
    McLean, VA 22101

ATEL DEVELOPMENT LLC,
    *Serve on*: Registered Agent
    James Loots
    634 G Street, SE Ste.200
    Washington, DC 20003

3644 13ᵀᴴ STREET LLC,
    *Serve on*: Registered Agent
    Todd Ragimov
    100 M Street, SE #600
    Washington, DC 20002

1271 MORSE STREET LLC
    *Serve on*: Registered Agent
    James Loots
    634 G Street, SE Ste.200
    Washington, DC 20003

1220 POTOMAC AVENUE LLC,
    *Serve on:* Registered Agent
    Incorp Services, Inc.
    1090 Vermont Ave, NW, Ste 910
    Washington, DC 20005

3 S STREET NW LLC,
    *Serve on*:
    1350 BEVERLY RD 115-181
    McLean VA 22101

CASE NO.

COMPLAINT

```
58 T STREET NW LLC
     Serve on:
     1350 BEVERLY RD 115-181
     McLean VA 22101

ROMERO CONSTRUCTION, and
     Serve on:
     4110 Leisure Drive
     Temple Hills, MD 20748

ABEL ROMERO,
     Serve on:
     4110 Leisure Drive
     Temple Hills, MD 20748
Defendants.
```

## COMPLAINT FOR BREACH OF CONTRACT

**NOW COMES** MS. MAMIE PRESTON (hereinafter "Plaintiff"), by and through attorneys **ANACOSTIA LAW GROUP, LLC, TESFAYE MOHAMED & JOEL D. MAKONNEN,** who has filed this Complaint and sues Defendants FUAD "TODD" RAGIMOV, ATEL DEVELOPMENT LLC, 3644 13TH STREET LLC, 1271 MORSE STREET LLC, 3 S STREET NW LLC, 58 T STREET NW LLC, ROMERO CONSTRUCTION, and ABEL ROMERO for: Breach of Contract; Promissory Estoppel/Detrimental Reliance; Fraudulent Misrepresentation; Negligence; Violation of District of Columbia ("D.C.") Municipal Regulation 12A § 3307A; Violation of D.C. Consumer Protection Procedures Act, D.C. Code §28-3900, ("CPPA"); Destruction of Lateral & Subjacent Support; Trespass; Private Nuisance; Emotional Distress; Negligent Hiring and Supervision; and Request for Declaratory Judgment according to District of Columbia law:

## THE PARTIES

1. Plaintiff in this action is a natural person and resident of the District of Columbia, with an abode located at 3642 13TH Street, NW Washington, DC.

2. Plaintiff, now and at all times relevant, owns and resides at, the property located at 3642 13TH Street, NW Washington, DC (hereinafter "Plaintiff-Property"). Plaintiff resides at the said property with her spouse, minor child and three other family members.

3. Defendant FUAD "TODD" RAGIMOV (individually "Defendant-Fuad," collectively with corporation controlled by him "Ragimov-Defendants," and collectively with all Defendants "Defendants,") is a natural person who is a resident of the Commonwealth of Virginia, residing in Fairfax County, with an abode located at 1716 Strine Drive, VA 22101. Defendant-Fuad uses the alias name of Todd Ragimov including when carrying out business transactions, formally and informally, in the District of Columbia.

4. Defendant-Fuad, through various corporations that he owns and controls, engages in the business of purchasing properties in the District of Columbia, repairing, remodeling, and renovating them, and selling them to consumers for profit.

5. Defendant-Fuad rarely engages in these business activities in his own capacity, but regularly engages in the business through at least ten ("10") corporate entities owned and controlled by Defendant-Fuad. Defendant-Fuad routinely purchases, renovates and sells D.C. properties through a limited liability company that he names after the property address including, but not limited to, the following: (a) 3644 13TH STREET LLC, (b) ATEL DEVELOPMENT LLC, (c) 1271 MORSE STREET LLC, (d) 1220 POTOMAC AVENUE LLC, (e) 3 S STREET NW LLC, and (f) 58 T STREET NW LLC. (hereinafter collectively, including Defendant-Fuad, the "Ragimov-Defendants.") Under information and belief, the main reason for this type of business practice is to insulate Defendant-Fuad and his asset from liability resulting from negligence, fraud or other kinds of wrongdoing.

6. Defendant 3644 13TH LLC (individually "Defendant-3644," together with corporations controlled by Defendant-Fuad the "Ragimov-Defendants," and collectively "Defendants,") is an entity incorporated in, and existing under the laws of, the District of Columbia operating at, and owning, real property located at 3644 13th Street, NW Washington, DC 20002 (hereinafter "Defendant-Property"). Defendant-3644 is owned, controlled and managed by Defendant-Fuad.

7. Defendant 1271 MORSE STREET NE LLC (individually "Defendant-1271," together with corporations controlled by Defendant-Fuad the "Ragimov-Defendants," and collectively "Defendants,") is an entity incorporated in, and existing under the laws of, the District of Columbia operating, and owning real property located, at 1271 Morse Street, NE Washington, DC 20010. Defendant-1271 is owned, controlled and managed by Defendant-Fuad.

8. Defendant 1220 POTOMAC AVENUE LLC (individually "Defendant-Potomac," together with corporations controlled by Defendant-Fuad the "Ragimov-Defendants," and collectively "Defendants"), under information and belief, is an entity incorporated and conducting business in, and existing under the laws of, the District of Columbia, and owning the real estate located at, 1220 Potomac Avenue, SE Washington, DC 20003. Defendant-Potomac is owned, controlled and managed by Defendant-Fuad.

9. Defendant 3 S STREET NW LLC (individually "Defendant-3S," together with corporations controlled by Defendant-Fuad the "Ragimov-Defendants," and collectively "Defendants"), under information and belief, is an entity incorporated in, and existing under the laws of, the Commonwealth of Virginia. Defendant-3S owns and manages real estate located at 3 S

Street, NW, Washington, DC 20003. Defendant-3S is owned, controlled and managed by Defendant-Fuad.

10. Defendant 58 T STREET NW LLC (individually "Defendant-58," together with corporations controlled by Defendant-Fuad the "Ragimov-Defendants," and collectively "Defendants,"), under information and belief, is an entity incorporated in, and existing under the laws of, the Commonwealth of Virginia. Defendant-3S owns and manages real estate located at 3 S Street, NW, Washington, DC 20003. Defendant-3S is owned, controlled and managed by Defendant-Fuad.

11. Defendant ATEL DEVELOPMENT LLC, (individually "Defendant-Atel," together with corporation controlled by Defendant-Fuad the "Ragimov-Defendants," and collectively "Defendants"), is an entity that is active and carrying on business in the District of Columbia with its principal place of business at 1350 Beverly Rd, Suite 115-181, McLean VA, 22101 and with a local registered agent address of 634 G Street, SE, Washington, DC 20003. Defendant-Atel is owned, controlled and managed by Defendant-Fuad.

12. Defendant ROMERO CONSTRUCTION (individually "Defendant-Romero," and collectively "Defendants"), under information and belief, is a resident of the state of Maryland with an address at 4110 Leisure Drive, Temple Hills, MD 20748. Upon information and belief, and at all times relevant,

Defendant-Romero regularly engages in, and conducts, construction business in the District of Columbia, including the acts and omission giving rise to the instant action. Under information and belief, Defendant-Romero is not licensed to carryout general contractor work, including the work performed at Defendant-Property.

13. Defendant ABEL ROMERO (individually "Defendant-Abel," and collectively "Defendants"), under information and belief, is a natural person who is a resident of the State of Maryland, residing in Prince George's County, with an abode located at 4110 Leisure Drive, Temple Hills, MD 20740. Defendant-Abel owns, controls and is the authorized agent of Defendant-Romero. (Both, Defendant-Abel and Defendants-Romero, are hereinafter referred to as the "Romero-Defendants", and as "Defendants," with all the other Defendants.)

14. The Romero-Defendants, upon information and belief and at all times relevant, were hired, managed, controlled, and authorized agent of, the Ragimov-Defendants.

15. At all times relevant, the Romero-Defendants served as the construction contractors during the renovation work giving rise to the instant case.

## JURISDICTION AND VENUE

16. Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

17. This Court has subject-matter jurisdiction over the action pursuant to DC Code § 11-921[1].

18. This Court has personal jurisdiction over all Defendants, including, pursuant to D.C. Code § 13-422[2] and § 13-423.[3]

19. Venue is proper in this Court because the Defendants' acts and/or omissions giving rise to the instant action occurred within the District of Columbia. Furthermore, Defendants conduct business in the District of Columbia and all or substantial part of the events, acts, or omissions giving rise to Plaintiff's cause of action, and claims for relief against the Defendants, occurred within the boundaries of the District of Columbia.

---

[1] "[T]he Superior Court has jurisdiction of any civil action or other matter (at law or in equity) [and regardless of the amount in controversy] brought in the District of Columbia". D.C. Code § 11-921(a)(6).

[2] "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422.

[3] "A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia;(2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia …" D.C. Code § 13-423.

## ALTER EGO ALLEGATION

20. Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

21. At all relevant times, as alleged more fully herein, each of the Ragimov-Defendants acted as an agent, servant, employee, alter-ego and/or joint venturer of the other Ragimov-Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture. Each of the Defendant's acts alleged herein was done with the permission and consent of each of the other Ragimov-Defendants.

22. At all times relevant hereto, Ragimov-Defendants: ATEL DEVELOPMENT LLC, 3644 13TH STREET LLC, 1271 MORSE STREET LLC, 1220 POTOMAC AVENUE LLC, 3 S STREET NW LLC, and 58 T STREET NW LLC, were the alter egos of Defendant-Fuad, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between the Ragimov-Defendants such that any separateness between them has ceased to exist in that Defendant-Fuad completely controlled, dominated, managed, and operated the other Ragimov-Defendants to suit his convenience.

23. Specifically, at all times relevant hereto, Defendant-Fuad:
(1) controlled the business and affairs of ATEL DEVELOPMENT
LLC, 3644 13TH STREET LLC, 1271 MORSE STREET LLC, 1220
POTOMAC AVENUE LLC, 3 S STREET NW LLC, and 58 T STREET NW
LLC; (2) disregarded legal formalities and failed to
maintain arm's length relationships among the corporate
entities; (3) including inadequate capitalization; (4) used
the same office or business location and employed the same
employees/agents for all the corporate entities; (5) held
himself out as personally liable for the debts of the
corporate entities; (6) used the corporate entities as a
mere shells, instrumentalities or conduits for himself
and/or his individual businesses; (7) manipulated the assets
and/or liabilities between the corporate entities so as to
concentrate the assets in one and the liabilities in
another; (8) used corporate entities to conceal their
ownership, management and financial interests and/or
personal business activities; and/or (9) used the corporate
entities to shield against personal obligations, and in
particular the obligations as alleged in this Complaint.

24. At all times relevant thereto, Ragimov-Defendants: ATEL
DEVELOPMENT LLC, 3644 13TH STREET LLC, 1271 MORSE STREET
LLC, 1220 POTOMAC AVENUE LLC, 3 S STREET NW LLC, and 58 T
STREET NW, were influenced and governed by Defendant-Fuad.

Additionally, there was, and is, such a unity of interest and ownership that the individuality, or separateness, of ATEL DEVELOPMENT LLC, 3644 13TH STREET LLC, 1271 MORSE STREET LLC, 1220 POTOMAC AVENUE LLC, 3 S STREET NW LLC, 58 T STREET NW, and Defendant-Fuad has ceased, and that the facts are such that an adherence to the fiction of the separate existence of these entities would, under the particular circumstances, sanction a fraud or promote injustice.

### BUSINESS PRACTICE & VIOLATIONS
### OF THE RAGIMOV-DEFENDANTS

25. Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

26. The Ragimov-Defendants are in the business of flipping residential properties for profit. They purchase, particularly, old, blighted, and distressed properties in D.C. make quick and inexpensive repairs, to keep cost down, and re-sale the properties to D.C. consumers for profit

27. The renovations may be major or minor. Major renovations include but not limited to: excavation, addition, demolition, and/or erecting of walls. Depending on the scope of the renovation, the D.C. Department of Consumer and Regulatory Affairs ("DCRA") requires that applicants comply with certain prerequisites designed to protect D.C.

homeowners and consumers. Including submitting documents prepared, and carrying on construction work, by a D.C. Licensed Professionals, including Engineers and Construction Contractors.

28. During the course of the renovations, the Ragimov-Defendants' priorities are to keep costs low. Since, compliance with DCRA requirements may delay and add to the cost of renovation and construction project, under information and belief, the Ragimov-Defendants bypass, avoid, ignore, and/or disobey D.C. Building Codes; including providing misleading, false or inaccurate information to the DCRA, and consumer & homeowner such as the Plaintiff in the instant action.

29. The Ragimov-Defendants submit request for construction or renovation permit to the DCRA with inaccurate or misleading information in order to avoid greater scrutiny from the DCRA, scrutiny meant to safeguard consumers and adjacent property owners.

30. Ragimov-Defendants carry out construction work without the use of proper permit and without licensed contractors. Thereby, violating laws and causing harm to consumer and adjacent property owner such as the Plaintiff.

31. As more fully set forth hereunder, the Ragimov-Defendants, in carrying out the project subject to the instant cause of

action: carried out illegal construction in violation of D.C. Building Codes; provided false, misleading, and/or inaccurate information to the DCRA; and lied and/or intentionally mislead consumer and homeowner, the Plaintiff.

32. The illegal construction caused serious foundational and structural damages to neighboring and adjacent Properties, including Plaintiff's.

## STATEMENT OF FACTS

33. Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

34. On or about September 14, 2016, the Defendant-Fuad visited the Plaintiff.

35. Defendant-Fuad had a document titled "Notification Form: Safeguarding During Construction" (hereinafter the "Notification Form"), which D.C. law required him to deliver to, and secure the consent of, adjoining property owners before commencing any work. The document is attached hereto as Exhibit A.

36. Title 12A Chapter 33 of the D.C. Municipal Regulation, Section ("§") 3307A, titled, *Safeguarding During Construction* and *Protection of Adjoining Property*, imposes, upon individuals undertaking construction work, to take all necessary measures to protect adjoining properties and their

*Exhibit B - Page 13*

owners from damages during construction, alteration, repair, demolition or raze of a premise at the renovating party's expense. (Hereinafter the "Building Code"/"D.C. Code § 3307A").

37. Pursuant to the Building Code, Protection must be provided for adjoining property lots, and for all elements of a building or other structure, including, but not limited to, footings, foundations, Party-Walls, chimneys, skylights, and roofs. The code also requires renovating party to take all measures to control, and protect adjoining owners, from water runoff and erosion during construction, demolition or razing activities.

38. The Building Code, imposes on the renovating party the added requirement of providing written notice to all owners of adjoining properties advising each owner of an adjacent property of the proposed work.

39. Particularly, and pursuant to subsections §3307.2 and §3307.3 of the Building Code, renovating party is required to provide specific notice if the proposed work involves excavation and if it impacts the use of adjacent, stability or structural support, of a Party-Wall.

40. Section §3307.2.2.2 of the Building Code provides Plaintiff with options when responding to the written notice, including the option to object to, and an opportunity to

halt, the construction, if, among other things, Plaintiff believes that sufficient protection is not provided for Plaintiff-Property.

41. On that day, Defendant-Fuad delivered the notice to Plaintiff, he stated that he was going to commence construction on his property located at 3644 13th Street, NW Washington, DC 20010 next door (hereinafter "Defendant-Property").

42. Defendant-Fuad stated orally and in writing that the work will: (1) not involve an excavation; and (2) not impact the use, stability or structural support of the wall shared between Plaintiff-Property and Defendant-Property ("Party-Wall"). See Exhibit A.

43. Plaintiff inquired further about the work and Notification Form. Specifically, whether said renovation will negatively affect Plaintiff or Plaintiff-Property, located adjacent to Defendant-Property.

44. Defendant-Fuad stated that the renovation would not negatively affect Plaintiff or her property, and promised, in the event that Plaintiff or Plaintiff-Property were negatively affected, or otherwise damaged, Defendant-Fuad will compensate and make Plaintiff whole.

45. Responding to Plaintiff's concerns, Defendant-Fuad stated that he carried insurance covering the activities of the

renovation and such insurance provided full and complete coverage for Plaintiff-Property, and any damage caused to adjoining properties resulting from said renovation work would be covered by the insurance.

46. Plaintiff explained that she still did not feel comfortable consenting to the Notification Form.

47. To this, Defendant-Fuad made several statements assuring Plaintiff that all work would be performed with due care and any damages to Plaintiff or Plaintiff-Property will be fixed by Defendant-Fuad.

48. Plaintiff informed Defendant-Fuad that she would feel comfortable if she consulted with a third-party regarding Defendant-Fuad's promises, covenants and the Notification Form before she consented. Then, Plaintiff sought the advice of an attorney regarding the same.

49. The attorney advised Plaintiff to have a written agreement memorializing the Defendant-Fuad's covenants & promises.

50. Thereinafter, on September 29, 2016 Plaintiff and the Defendant-Fuad entered into an agreement, reducing the covenants and promises made by the Defendant-Fuad into writing, attached hereto as Exhibit B. (Hereinafter the "September-Contract.")

51. Pursuant to the September-Contract, the Defendant-Fuad promised to do its "utmost to minimize the renovation's impact" on Plaintiff or Plaintiff-Property. See Exhibit B.

52. Defendant-Fuad further promised, in writing, that "[i]n the event of your property or items at your property are damaged or affected as result of the work at 3644 13th [Street] NW, we [the Ragimov-Defendants] will fix them at our expense and your satisfaction." See Exhibit B.

53. Defendant-Fuad repeatedly stated, orally and in writing, that he carried Builders Risk and General Liability Insurance that covered any damage to Plaintiff or Plaintiff-Property. See Exhibit B.

54. Furthermore, to ease Plaintiff's anxiety and worry, the Defendant-Fuad promised in writing to "Provide [Plaintiff] with copies of Builders Risk & [General Liability] Insurances," that covered damage to Plaintiff's properties.

55. However, Defendant-Fuad did not have "Builders Risk" or "General Liability Insurance," that covered damage to Plaintiff's properties. At the time he made the statement, Defendant-Fuad knew he had no insurance covering Plaintiff or her Property.

56. The Defendant-Fuad signed the September-Contract. See Exhibit B.

57. Additionally, the Defendant-Fuad promised that any work performed would be carried out by "Licensed Contractors" and supervised by "Engineers." See Exhibit A.

58. On or about the month of June 2017, Defendant commenced construction work, roughly one year after delivering the Notification Form to Plaintiff.

59. Defendants completely gutted the Defendant-Property and removed the rear wall in its entirety. Several days into the construction Plaintiff discovered piles of construction debris on her backyard. However, Plaintiff ignored the situation, mainly to avoid putting strain between Defendant-Fuad and herself. Plaintiff instructed her minor child to avoid playing in the backyard, where the minor regularly plays.

60. On or about the night of July 30, 2017 Plaintiff was sleeping when she was suddenly awakened by a startling scream coming from her basement. Two members of her family were staying in the basement that night.

61. Plaintiff rushed down the basement and discovered the basement full of water and witnessed her family members in panic and struggling to contain the water.

62. As soon as they evacuated, Plaintiff immediately investigated to find the source of the flood and discovered that it was coming from Defendant-Property.

63. Shortly thereafter, Plaintiff called Defendant-Fuad but Defendant-Fuad claimed that he was unavailable and on vacation.

64. Plaintiff next called the foreman in charge of the construction work but the foreman did not answer.

65. Plaintiff then called D.C. Water and Sewer Authority (hereinafter "D.C. Water"). Official from D.C. Water arrived and prior to arrival, the water to Plaintiff-Property and others in the neighborhood were shut from the main street. Subsequently thereafter, Plaintiff's gas and electric service were also shut.

66. Upon investigation, D.C. Water determined that the source of the flood was Defendant-Fuad's damaged water pipe, destroyed by the Defendants during construction.

67. When Plaintiff inquired if D.C. Water could extract the water in the basement of Plaintiff-Property, D.C. Water explained that it could not do anything about the flood of water in Plaintiff's basement. D.C. Water suggested that Plaintiff contact owner of Defendant-Property and/or hire private company to extract the water.

68. Plaintiff then called Defendant-Fuad explained what D.C. Water had said, and requested that Defendant-Fuad remedy the damage to her basement, including extracting the water out of her basement.

69. To this, Defendant-Fuad promised to remedy the flood damage. Defendant-Fuad instructed Plaintiff to hire and pay professional to extract the water, and promised to reimburse Plaintiff, among other things, for the cost of extracting the water out of the basement (hereinafter the "July-Contract").

70. In reliance of Defendant-Fuad's promise to pay and reimburse, Plaintiff contacted a private company, 911 RESTORATION, a company that provides disaster recovery services, including water extractions, sewage cleanup, and mold removal, and asked them to extract the water out of her property. Plaintiff signed an agreement with 911 RESTORATION (hereinafter the "911 Service Agreement"), attached hereto as Exhibit C.

71. 911 RESTORATION extracted the water out of Plaintiff-Property basement. Plaintiff paid 911 RESTORATION the total amount of Four Thousand and Five Hundred Dollars ($4,500.00) using her personal credit card. See attached receipt, hereinafter Exhibit D.

72. 911 RESTORATION determined that the water inflicted serious damage to Plaintiff's real and personal properties alike. The basement, which Plaintiff had recently remodeled and renovated, expending several thousands of dollars, sustained serious damage. The floor and brick walls were damaged

beyond repair. In fact, because of the extent of the water, 911 RESTORATION had to cut through Plaintiff's eight-inch brick-wall to prevent the rapid escalation of the damage caused by water. It took 911 RESTORATION nearly one week to extract the water and temporarily fix the problem. See Exhibit C.

73. Despite the traumatic experience on Plaintiff and her family, and the damage to her basement, Plaintiff and her family had to spent the night in the property because they had nowhere else to go.

74. After 911 RESTORATION finished the extraction, Plaintiff subsequently sent Defendant-Fuad the invoice and a request for reimbursement. See Exhibit E.

75. However, Defendant-Fuad refused to reimburse Plaintiff and Plaintiff has not received any payment or reimbursement of any kind for the payment made to 911 RESTORATION. Also, Plaintiff has not received compensation or payment for other damages to her personal and real property resulting from the water damage. Defendant-Fuad has not responded to Plaintiff's repeated request to repair, pay or reimbursement for, damages, including the fee for the extraction.

76. Shortly after the incident, Plaintiff and her family left for a vacation lasting about two weeks and returned on August 10, 2017, shortly before noon.

77. That day, Plaintiff and her family had just returned and were relaxing in the main floor when, on or about 1:00pm, they heard emergency siren and, simultaneously, a very loud banging on the front door of Plaintiff-Property.

78. When Plaintiff opened the door, the Fire Marshal, dressed in full gear, ordered Plaintiff to evacuate immediately. The Fire Marshal explained that there was an imminent threat of gas explosion and collapse of her property.

79. Terrified and in panicked, Plaintiff's minor child rushed upstairs, so Plaintiff had to run after him, grabbed him and evacuated Plaintiff-Property.

80. Plaintiff wanted to go down the basement to get the rest of her family, but the Fire Marshal ordered Plaintiff to evacuate and that he would get Plaintiff's family.

81. On the scene of the emergency were Department of Homeland Security Management Agency, D.C. Fire and Emergency Medical Service Department (D.C, Fire), an official from Office of the Mayor, officials from the D.C. Department of Consumer and Regulatory Agency (DCRA), Police Officers, News Crews, Police Cars and Fire trucks with emergency lights on. The entire neighborhood was an emergency scene with intersections and roads blocked. See Exhibit F.

82. Due to the emergency, D.C. Fire and D.C. Police evacuated at least fourteen (14) people from the neighborhood. Many of them from properties adjoining Defendant-Property.

83. Upon examination, including by DCRA, it was discovered that Defendants had been secretly conducting illegal and unauthorized excavation and demolition work. Defendants' illegal activity caused serious and significant shifting of adjacent and neighboring property foundations and walls. Which in turn caused significant cracking and imminent collapse of neighboring properties, and posed serious risk of gas explosion. See DCRA brief report on the Emergency, attached hereto as Exhibit G.

84. DCRA investigation revealed that Defendants' unauthorized activities caused, including but not limited to, substantial shifting of adjacent property foundation, significant wall cracks, serious structural damage, visible wall separations. Families were advised to not return to their homes, and the neighboring homes were boarded for safety and security, DCRA issued a Stop Work Order barring the Ragimov-Defendant from conducting any activity on Defendant-Property. See DCRA Stop Work Order, attached hereto as Exhibit D. See also Exhibit H.

85. DCRA investigation also revealed that Defendants did not employ competent individuals with adequate skill or

background to do the Work. In fact, workers carrying out the illegal and unauthorized excavation fled the scene before officials from DC Fire, Police and Mayor's Office arrived. See Exhibit D.

86. That day and for the following 14 days thereafter, Plaintiff and her family stayed at a hotel and moved from one hotel to another. During this time, further investigations were conducted to determine safety and security of Plaintiff-Property.

87. Several structural engineers carried out studies to determine the safety and security risk, as well as, assess the damage to Plaintiff-Property. The engineers carried-out a preliminary structural-condition survey and evaluation of the building to determine structural integrity and identify structural damage, cosmetic damage and any issues associated with the development of cracks observed within the interior and exterior of walls.

88. The structural engineers came to the same conclusion about damage sustained by Plaintiff-Property and actions Plaintiff needed to take to remedy the damage. The Engineers determined that, as a result of Defendants' activities, Plaintiff-Property walls sustained serious damage, including slopping. That Plaintiff's East and North Walls are damaged

beyond repair and, at the least, must be torn down and rebuilt anew.

89. The Engineers also determined that there was significant shift in Plaintiff-Property foundation causing a tilt and imbalance in all three floors of Plaintiff-Property, including the basement, main and second floor.

90. The Engineers also determined that the shift and imbalance have caused further damage to Plaintiff-Property doors, ceilings and support beams. All but few of the doors in Plaintiff-Property have stopped functioning properly. The shifting of the walls has caused considerable damage including cracks to the windows causing the windows to not function properly. The shifting and slopping continue. The cracks on the walls continue to worsen by the day and existing damage needs proper investigation and remedy.

## FIRST COUNT

### (BREACH OF SEPTEMBER-CONTRACT: RAGIMOV-DEFENDANTS)

91. Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

92. On or about September 29, 2016 Plaintiff and Ragimov-Defendants entered into valid and enforceable Contract.

93. Upon lengthy deliberation and consultation, and persuaded by Ragimov-Defendants' promises, Plaintiff agreed and

consented to the Notification Form and to forego initial objection to the construction.

94. Pursuant to the September-Contract, Ragimov-Defendants promised, and were obligated, to carry out the construction activities with care and diligence so as not to cause any damage to Plaintiff or Plaintiff-Property.

95. Pursuant to the contract, Ragimov-Defendants promised, and were obligated, to carry out the construction using Licensed Professional.

96. Pursuant to the contract, Ragimov-Defendants promised, and were obligated, to have the Licensed Professionals supervised by Professional Engineers.

97. Pursuant to the contract, Ragimov-Defendants promised, and were obligated to compensate Plaintiff for any loss or damage caused by Defendants' construction activities.

98. Ragimov-Defendants failed to fulfil their obligation and breached the contract when Ragimov-Defendants failed to provide compensation for Plaintiff for damages caused by the water flood from the damaged pipe.

99. Ragimov-Defendants failed to fulfil his obligation and breached the contract when Ragimov-Defendants failed to employ Licensed Professional to carry-out the construction.

100.   Ragimov-Defendants failed to fulfil their obligation and breached the contract when Ragimov-Defendants failed to have Engineers supervising the construction.

101.   Ragimov-Defendants failed to fulfil their obligation and breached the contract when Defendants negligently carried out the construction.

102.   Ragimov-Defendants failed to fulfil their obligation and breached the contract when Defendants performed excavation without proper permit and in violation of the law.

103.   Ragimov-Defendants failed to fulfil their obligation and breached the contract when Ragimov-Defendants refused to compensate Plaintiff for the Structural Damage, including, but not limited to, damages to walls, floors, ceilings, doors and windows.

104.   Plaintiff gave the Ragimov-Defendants opportunities to comply with the terms of the contract but Ragimov-Defendants repeatedly refused to perform his part of the obligation.

105.   Ragimov-Defendants' failure to perform puts them in clear material breach of the Contract between the Parties.

106.   Defendants' breach has caused considerable damage to Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against Defendants and each of them as herein set forth.

## SECOND COUNT

### (BREACH OF JULY-CONTRACT: RAGIMOV-DEFENDANTS)

107.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

108.    On or about July 30, 2017 the Plaintiff and the Ragimov-Defendants entered into valid and enforceable Contract.

109.    Pursuant to the July-Contract, the Ragimov-Defendants promised to, and were obligated to pay and, reimburse Plaintiff for all damages caused by the flood.

110.    Particularly, Ragimov-Defendants requested Plaintiff advance and pay fees to extract the water in her basement, promising to reimburse Plaintiff the full amount.

111.    Plaintiff paid the extraction fee in the amount of Four Thousand and Five Hundred Dollars ($4,500).

112.    When it was time for the Ragimov-Defendants to perform their obligation under the contract, they refused.

113.    Ragimov-Defendants' failure to perform puts them in clear material breach of the July-Contract.

**WHEREFORE,** Plaintiff demands judgment against Ragimov-Defendants and each of them as herein set forth.

## THIRD COUNT

### (PROMISORY ESTOPPEL/DETERIMENTAL RELIANCE: RAGIMOV-DEFENDANTS)

114.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

115.    This Promissory Estoppel Cause of Action is pled only in the alternative and in the event that this Court were to decide Plaintiff cannot recover under the First and Second count.

116.    On September 2016 Plaintiff, at the special instance and request of Ragimov-Defendants, entered into the September-Contract, foregoing her statutory right to object to the construction.

117.    Ragimov-Defendants promised to use due care when carrying out the construction work to prevent damage to Plaintiff and Plaintiff-Property. However, Defendants carried on illegal and unauthorized construction work and did so negligently and intentionally. See attached list of Stop Work Orders, Exhibit H.

118.    Ragimov-Defendants promised to employ Licensed Contractors to perform the construction work. However, Ragimov-Defendants did not employ Licensed Contractors to carry out the construction work.

119.    Ragimov-Defendants promised to employ Engineers to supervise the Licensed Contractors and during the course of

the construction. However, Ragimov-Defendants did not employ Professional Engineers to supervise the construction.

120.   Ragimov-Defendants promised to pay for all and any damages to Plaintiff or Plaintiff-Property resulting from construction work. However, Ragimov-Defendants have refused to reimburse Plaintiff and has refused to repair, or otherwise compensate for, the damage caused to Plaintiff and Plaintiff-Property.

121.   Plaintiff actually relied on all of Ragimov-Defendants' promises.

122.   As a result of Ragimov-Defendants' act and omissions, Plaintiff has incurred substantial loss and damage.

123.   On July 2017 Plaintiff, at the special instance and request of the Ragimov-Defendants, entered into the July-Contract.

124.   Ragimov-Defendants promised to pay Plaintiff for damages caused by the July water flood.

125.   Ragimov-Defendants promised to reimburse Plaintiff expense incurred in extracting the water out of Plaintiff-Property, including $4,500.

126.   Plaintiff actually relied on Ragimov-Defendants' Promises.

127.    As a result of Ragimov-Defendants' failure to fulfil the promises, Plaintiff has incurred substantial loss and damage, including $4,500 paid to water extraction company.

**WHEREFORE,** Plaintiff demands judgment against Defendants and each of them as herein set forth.

<u>FOURTH COUNT</u>

**(FRAUDULENT MISREPRESENTATION: RAGIMOV-DEFENDANTS)**

128.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

129.    In the course of, but not limited to, the September-Contract negotiations, Ragimov-Defendants made false representation, or willfully omitted relevant facts, with regards to hiring Licensed Contractors.

130.    In the course of, but not limited to, the September-Contract negotiations, Ragimov-Defendants made false representation, or willfully omitted relevant facts, with regards to having Engineers present, and supervising said Licensed Contractors, during construction.

131.    In the course of, but not limited to, the September-Contract negotiations, Ragimov-Defendants made false representation, or willfully omitted relevant facts, with regards to having insurance that covered damages to

Plaintiff and Plaintiff-Property resulting from Ragimov-Defendants' construction.

132.   In the course of, but not limited to, the September-Contract negotiations, Ragimov-Defendants made false representation, or willfully omitted relevant facts, with regards to remedying, paying or reimbursing Plaintiff for damages to Plaintiff or Plaintiff-Property from Ragimov-Defendants' construction.

133.   In the course of, but not limited to, the construction period, Ragimov-Defendants made false representation, or willfully omitted relevant facts, with regards to remedying, paying or reimbursing Plaintiff for damages to Plaintiff or Plaintiff-Property from Ragimov-Defendants' construction.

134.   Ragimov-Defendants had knowledge, or reason to know, that the said promises were false.

135.   Ragimov-Defendants made the promises with the intent to induce Plaintiff's reliance.

136.   Plaintiff acted in reliance of Ragimov-Defendants' promises and has suffered substantial damages.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

## FIFTH COUNT

### (NEGLIGENCE: ALL DEFENDANTS)

137.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

138.    Defendants owed a duty to Plaintiff to protect Plaintiff-Property, including protecting the walls and foundation, during the construction, by, among other things: properly underpinning and support, employing the service of competent professional and complying with applicable law.

139.    Defendants breached their duty to Plaintiff when they undertook construction without the proper permit.

140.    Defendants breached their duty to Plaintiff when they carried-out construction without the use of competent professionals.

141.    Defendants breached their duty to Plaintiff when they carried-out construction in complete disregard and in violation D.C. laws.

142.    Defendants breached their duty to Plaintiff when they carried out the construction negligently.

143.    Defendants failed to meet all applicable standards of care when they carried out the construction work.

144.    Defendants' failure to: properly protect Plaintiff-Property; employ competent workers and professionals; intentional violation of D.C. law; carrying on the construction in a negligent manner, including through other

wrongful acts and omissions was the actual and proximate cause of the damage to Plaintiff-Property.

145.    Plaintiff has suffered serious and substantial, and foreseeable, damage caused by Defendants' negligence.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

<u>SIXTH COUNT</u>

**(VIOLATION OF D.C. MUNICIPAL REGULATION 12A § 3307A: ALL DEFENDANTS)**

146.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

147.    D.C. Code 12A § 3307A.1 states that "[a]djoining … private property shall be protected from damage during construction, alteration, repair, demolition or raze of a premise at the expense of the person causing the work. Protection must be provided for lots, and for all elements of a building or other structure, including, but not limited to, footings, foundations, Party-Walls, chimneys, skylights, and roofs. Provisions shall be made to control water runoff and erosion during construction or demolition or raze activities." *See* D.C. Code Mun. Regs. tit. 12A § 3307A.1

148.    Defendants violated D.C. Code § 3307A.1 by failing to provide protection to Plaintiff-Property during the construction work.

149.    Defendants' failure to abide by D.C. Code § 3307A.1 resulted in substantial damage to Plaintiff-Property including, but not limited to, Plaintiff-Property foundation, walls, stairs, floors, support beams, and floors.

150.    The regulation further provides that "[w]here an owner (or the owner's authorized agent) seeks to undertake work on its premises that involves (a) the need to install structural support of an adjoining building or structure, including underpinning or (b) the need to support an adjacent premises (not including a public way), where excavation is to take place on the owner's premises, the owner seeking to undertake the work shall provide written notice to the owners of adjoining premises in accordance with this Section 3307.2.1 advising each owner of an adjacent premises of the proposed work and the need for specific measures to be undertaken to protect the adjoining premises, and, if applicable, requesting access to the adjoining premises to install structural support or to provide support for the excavation on the requesting owner's premises." See D.C. Code § 3307A.2.

151.    Defendants violated D.C. Code § 3307A.2 when they failed to provide written notice of the excavation, and other construction activities, to Plaintiff.

152.   In pertinent part, the regulation also provides, "proper underpinning of existing adjoining or Party-Walls which require underpinning shall be provided." See D.C. Code § 3307A.3

153.   Defendants violated D.C. Code § 3307A.3 by failing to provide proper underpinning.

154.   D.C. Code § 3307A.4 further provides: "[w]here construction work occurs that could affect the structural integrity of a Party-Wall, the person causing the work shall preserve the Party-Wall from injury and ensure the structural stability of the Party-Wall at said person's own expense. The Party-Wall shall be maintained weatherproof and structurally stable." See D.C. Code § 3307A.4

155.   Defendants violated D.C. Code § 3307A.4 when they failed, and continued to fail, to preserve the Party-Wall from injury and failing to ensure the structural stability of the Party-Wall. Defendants have failed to maintain the Party-Wall structurally stable and have refused, and continue to refuse, to repair the damage to Plaintiff's wall.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

<u>SEVENTH COUNT</u>

**(LOSS OF LATERAL AND SUBJACENT SUPPORT: ALL DEFENDANTS)**

156.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

157.    The Plaintiff-Property and Defendant-Property adjoin each other at the northern boundary of Plaintiff-Property's land and at the southern boundary of Defendant-Property's land.

158.    At all times pertinent to this Complaint, Plaintiff-Property had received subjacent and lateral support from Defendant-Property. The support has been damaged by the movement of the wall caused by Defendants' intentional, wrongful and negligent construction.

159.    Defendants' knowingly, intentionally, and negligently carried out construction work that deprived Plaintiff-Property said support.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

<u>**EIGHTH COUNT**</u>

**(EMOTIONAL DISTRESS: ALL DEFENDANTS)**

160.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

161.   Defendants' intentional and reckless acts and omissions hereinabove mentioned have caused Plaintiff and her minor child extreme emotional distress.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

### NINTH COUNT

### (TRESPASS: ALL DEFENDANTS)

162.   Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

163.   Defendants through their intentional acts and omissions caused the entry, including and not limited to, flood of water and other objects onto Plaintiff-Property.

164.   Said entry caused serious and substantial damage to Plaintiff's real and personal property.

165.   Said entry seriously interfered with Plaintiff's property right.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

### TENTH COUNT

### (PRIVATE NUISANCE: ALL DEFENDANTS)

166.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

167.    Defendants, by their acts and omissions described above, have invaded Plaintiffs interest in private use and enjoyment of her property.

168.    Plaintiff suffered and continues to suffer financial and economic loss, personal injuries, emotional distress, loss of private use and enjoyment of her property, interference with physical condition of the land, disturbance of her comfort, and exposure and increased exposure to odors from sitting water and piles of debris and other garbage material.

   **WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

<u>ELEVENTH COUNT</u>

**(VIOLATION OF D.C. CONSUMER PROTECTION PROCEDURES' ACT § 28-3904: ALL DEFENDANTS)**

169.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

170.    The D.C. Consumer Protection Procedures Act ("CPPA") explicitly provides that it shall be a violation of the CPPA to "*violate any provision of **title 16** of the District of Columbia Municipal Regulations.*" See D.C. Code § 28-3904

Page 39 of 47

*Exhibit B - Page 39*

(dd) (emphasis added). Defendant violated *title 16* of D.C. Municipal regulation, including but not limited to, by their:

  a. "[F]ailure to protect adjoining property owner from damage." D.C. Code Mun. Regs. tit. 16 § 3306.1(k). *See also*, 12-A DCMR § 3307.1. and D.C. Register, Vol. 66, Issue 5.

  b. "[A]llowing/creating unsafe structures, conditions or equipment." Id. 16 § 3306.1(p). *See also*, 12-A DCMR §115.1

  c. "[F]ailure to obtain required permit; working without a required permit." Id. 16 § 3306.1(a). *See also*, 12-A DCMR §§ 105.1, 105.1.1 and 105.1.3

  d. "[W]ork or conditions exceeding scope of permit." Id. 16 § 3306.1(b). See also, 12-A DCMR § 105.1

  e. "[W]orking outside of permitted construction hours." Id. 16 § 3306.1(c). See also, 12-A DCMR § 105.1.2

  f. "[W]orking outside of permitted hours without a required after-hours permit." Id. 16 § 3306.1(d). *See also*, 12-A DCMR § 105.1.3

  g. "[F]ailure to submit timely permit application for emergency work." Id. 16 § 3306.1(e). *See also*, 12-A DCMR § 105.1.8

171.    Furthermore,   the   Ragimov-Defendants   violated   the CPPA's  §  28-3904,  which  provides  that  it  shall  be  a violation of the CPPA "for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including" to:

a. "misrepresent  as  to  a  material  fact  which  has  a tendency to mislead;"

b. "fail to state a material fact if such failure tends to mislead;"

c. "represent  that  a  transaction  confers  or  involves rights,  remedies,  or  obligations  which  it  does  not have or involve, or which are prohibited by law;"

d. "use  innuendo  or  ambiguity  as  to  a  material  fact, which has a tendency to mislead;" and

e. "represent  that  the  person  has  a  *sponsorship*, approval,  status,  *affiliation,  certification*,  or connection that the person does not have."

See D.C. Code § 28-3904(b)-(f) (emphasis added).

172.    Ragimov-Defendants violated the CPPA by, including but not  limited  to,  representing  that  they:  had  insurance  to protect against damage to Plaintiff or her Property; will employ  licensed  contractors;  will  have/had  professional engineers  to  oversee  the  construction;  will  use  due  care during construction; and will not conduct excavation work.

173.    Ragimov-Defendants further violates the CPPA, D.C. Code § 28-3904(f) including but not limited to, by:

   a. Failing to state the material fact that they carried no insurance to cover damage to Plaintiff Property;

   b. Failing to state that they were planning to conduct excavation and demolition work;

   c. Failing to state that they did not have licensed contractors to carry out the work; and/or

   d. Failing to state that they did not have licensed engineers to supervise.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth.

<u>**TWELFTH COUNT**</u>

**(NEGLIGENT SUPERVISION AND HIRING: RAGIMOV-DEFENDANTS)**

174.    Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

175.    At all times relevant, the Ragimov-Defendants had a duty to use reasonable care to employ competent and careful workers to do work which involves a risk of physical harm to others unless it is skillfully and carefully done.

176.    The Ragimov-Defendants breached this duty by hiring contractors that were not licensed to conduct construction work in D.C.

177.     The Ragimov-Defendants breached this duty by selecting unqualified contractors to conduct significant renovation work of a substandard quality.

178.     As a direct and proximate result of the acts and omissions of Ragimov-Defendants, Plaintiff was, and continues to be, damaged by the renovation work that caused serious structural and foundational damage to Plaintiff-Property.

179.     As a further direct and proximate result of the acts and omissions of the Ragimov-Defendants, Plaintiffs have been forced to incur direct monetary damage and will incur great and substantial monetary damage to remedy the damage caused by said breach.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth

### THIRTEENTH COUNT

**(DECLARATORY JUDGMENT AS TO EXISTENCE OF EASEMENT AND FOR INJUNCTIVE RELIEF: RAGIMOV-DEFENDANTS)**

180.     Plaintiff repeats, re-alleges, and incorporates, by reference, each of the foregoing allegations as though fully set forth herein.

181.     At all times relevant, Plaintiff was and still is in possession of the above described Plaintiff-Property and of all the rights and easements belonging thereto.

182.   At all times relevant, the Ragimov-Defendants, and Defendant-3644, were and still are the fee simple owners of the above described Defendant-Property.

183.   At all times relevant, Plaintiff-Property and Defendant-Property adjoin each other at the northern boundary of Plaintiff's land and at the southern boundary of the Ragimov-Defendants' land.

184.   Plaintiff and her predecessors in title have been proprietors, together with Defendant-3644, of a party wall running in a South-East/East-West direction, which serves as the common wall, and which the Ragimov-Defendants, through their wrongful acts and/or omissions have damaged and destroyed. Thereby, also destroyed Plaintiff's right, use and enjoyment of said easement.

185.   Plaintiff has demanded the Ragimov-Defendants halt causing, or attempt to cause, further damage to the easement, Party-Wall. However, Ragimov-Defendants have not complied. Plaintiff has also informed the Ragimov-Defendants of the existence of the easement and demanded that Ragimov-Defendants repair the said easement and that Ragimov-Defendant allow Plaintiff the full use and enjoyment of the easement, which the Ragimov-Defendants, including Defendant-3644, have wrongfully failed to comply.

186.    By reason of the Ragimov-Defendants' acts and/or omission Plaintiff has been unable to use or enjoy the easement, and consequently, Plaintiff has suffered and will continue to suffer damages of irreparable character.

187.    Plaintiff has no adequate remedy at law.

**WHEREFORE,** Plaintiff demands judgment against hereinabove mentioned Defendants and each of them as herein set forth

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Declares that Ragimov-Defendants breached the September-Contract;

(b) Declares that Ragimov-Defendants breached the July-Contract;

(c) Judgment against Ragimov-Defendants for $4,500.00, and interest on that amount at the rate of 5% per annum, beginning on July 30, 2017;

(d) Judgment against Romero-Defendants for $4,500.00, and interest on that amount at the rate of 5% per annum, beginning on July 30, 2017;

(e) Declare that all Defendants are jointly and severally liable;

(f) Judgment against any or all Defendants for $1,800,000.00, and interest on that amount at the rate of 5% per annum, beginning on August 10, 2017;

(g) Punitive damage in an amount to be determined by the fact finder;

(h) Grant constructive trust in Plaintiff favor and against Ragimov-Defendants in amount equal to Ragimov-Defendants' liability;

(i) Grant constructive trust in Plaintiff favor, and against Defendant-3644, in the Property located at 3644 13th Street, NW Washington, DC 20010("Defendant-Property);

(j) Grant constructive trust in Plaintiff favor and against the Ragimov-Defendants in the Properties owned by each of them.

(k) Grant constructive trust in Plaintiff favor and against the Romero-Defendants in amount equal to Romero-Defendants' liability;

(l) Declare that Plaintiff has an easement in the Party-Wall described above;

(m) Enjoining the Ragimov-Defendants permanently and during the pendency of this action from further damaging the easement.

(n) Reasonable attorney's fees and expenses;

(o)   Costs   and   expenses   incurred   pursuing   this   action
including filing and processor fees; and

(p)   Such  other  and  further  relief  as  this  Honorable  Court
deems just and proper.

## <u>REQUEST FOR TRIAL</u>

Plaintiff demands jury trial on all issues so triable

**ANACOSTIA LAW GROUP, LLC**
7910Woodmont Avenue, S-410
Bethesda, MD 20814,
office: (240) 781-9157
fax: (202) 204-0836
*Attorneys for Plaintiff*


DATED: March  7 , 2019        By      */s/* Tesfaye Mohamed
_____

TESFAYE MOHAMED, ESQ*[4]
Associate Attorney
Maryland Bar Only
7910 Woodmont Avenue, S-410
Bethesda, MD 20814
office: (240) 781-9157
cell: (651) 239-5744
fax: (202) 204-0836
tesfaye@anacostialaw.com


*/s/* Joel Makonnen
_____
JOEL D. MAKONNEN, ESQ
DC Bar No. 1034591
7910 Woodmont Avenue, S-410
Bethesda, MD 20814
office: (240) 781-9157
fax: (202) 204-0836
cell: (202) 873-4146
jdmakonnen@anacostialaw.com

---

4 * Licensed  to  practice  law  in  the  State  of  Maryland  alone  (Atty.  #
1806190109).  Practicing  in  the  District  of  Columbia  pursuant  to  D.C.  App.  R.
49(c)(7) and/or (c)(8), and under the supervision of Mr. Joel D. Makonnen
(DC. Bar No. 1034591).

*Exhibit B - Page 47*