**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **3644 13TH ST NW LLC, et al.** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 19-2912 (JDB)** |
| **ATAIN SPECIALTY INSURANCE COMPANY,** | |
| **Defendant.** | |

**<u>MEMORANDUM OPINION</u>**

This case arises from a house-flipping gone wrong.  Plaintiff Todd Ragimov and his wholly-owned entities Atel Development LLC and 3644 13th St NW LLC (collectively, "the Ragimov Plaintiffs") renovate run-down properties and "flip" them for a profit.  But the renovation of 3644 13th Street NW ("the 3644 Property") did not go as planned: an accident while contractors were performing underpinning work caused significant damage not just to the 3644 Property but also to the adjoining houses at 3642 and 3646 13th Street, owned respectively by Mamie Preston and Cristobal and Ofelia Argueta.  Preston and the Arguetas then both filed lawsuits against the Ragimov Plaintiffs and their contractor ("the Preston Suit" and "the Argueta Suit," respectively).  But although Ragimov notified his liability insurer, defendant Atain Specialty Insurance Company ("Atain"), and demanded that it defend him in these suits, Atain refused on the ground that Ragimov's policy was void and/or inapplicable to the Preston and Argueta Suits.  The Ragimov Plaintiffs then brought this action seeking a declaratory judgment that Atain is obligated to defend them in the Preston and Argueta Suits.  Atain responded with a counterclaim against the Ragimov Plaintiffs as well as Preston and the Arguetas, seeking an inverse declaration that Atain has no duty to defend the Ragimov Plaintiffs in the suits.

1

Before the Court are the parties' cross-motions for summary judgment, a motion for default judgment as to Mamie Preston, and a motion by Atain to strike plaintiffs' memorandum in support of their cross-motion. Briefing is complete, and all three motions are ripe for decision. Although the Court will deny Atain's motion to strike, the Court concludes that Atain has no duty to defend the Ragimov Plaintiffs in the Preston and Argueta Suits. Accordingly, the Court will grant Atain's motion for summary judgment, deny plaintiffs' cross-motion, and issue a corresponding declaratory judgment. The Court will also deny as moot Atain's motion for a default judgment as to Mamie Preston, on the understanding that the Court's declaratory judgment will bind her just as it does the other counterclaim-defendants.

### Background

### I.   The Ragimov Plaintiffs and the Atain Policy

Plaintiff Todd Ragimov is in the business of flipping houses: purchasing run-down or abandoned properties, remodeling them, and flipping them for a profit. He conducts this business through plaintiff Atel Development LLC ("Atel"), of which he is the sole member and manager. Compl. [ECF No. 1-2] ¶ 3; Pls.' Ex. A [ECF No. 50], Decl. of Todd Ragimov ("Ragimov Decl.") ¶ 2.[1] Ragimov is also the managing member of a second LLC, 3644 13th St NW LLC ("3644 LLC"), which owns the 3644 Property. Def.'s Ex. N, Resp. of Pls. to Atain's First Reqs. for Adm'n [ECF No. 45-14] ("Pls.' RFA Resps.") ¶¶ 2, 4.[2]

On May 25, 2016, 3644 LLC purchased the 3644 Property with the intention of flipping it. Ragimov Decl. ¶ 5. A few months later, Mr. Ragimov approached Chenault Insurance Services

---

[1] Plaintiffs submitted 13 exhibits in support of their cross-motion for summary judgment, filed as a single document. The Court will refer to these exhibits as "Pls.' Ex. X," followed by a description of the specific exhibit.

[2] In support of its motion for summary judgment, Atain submitted a "compendium" of seventeen exhibits, each docketed separately under ECF No. 45. The Court will cite those exhibits as "Def.'s Ex. X," followed by a description of the exhibit and its individual ECF number.

LLC ("Chenault") "about extending or replacing [the] existing insurance coverage" on his properties, including the 3644 Property, Ragimov Decl. ¶ 7, and Chenault recommended a "House Flipper" liability insurance policy offered by Burns & Wilcox Ltd. and underwritten by Atain, id. ¶ 8; Compl. ¶ 13.  Ragimov and Chenault then prepared an application for this policy: Ragimov filled out a form entitled "Burns & Wilcox 'House Flipper' Insurance Application," see Def.'s Ex. I [ECF No. 45-9]; Pls.' Ex. B (same document), and Chenault completed and submitted a supplemental application entitled "General Contractors/Developers General Liability Application," see Def.'s Ex. J [ECF No. 45-10]; Pls.' Ex. C (same document).[3]  Burns & Wilcox issued a proposed binder for the policy on August 25, 2016, Pls.' Ex. D, and Atain issued a liability insurance policy to "Todd Ragimov, etal" [sic] effective September 14, 2016 ("the Atain Policy"), see Def.'s Ex. H [ECF No. 45-8].[4]

The Atain Policy is long, but the gist is simple: Atain agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  Def.'s Ex. H at 45.  Under the policy, Atain also has "the right and duty to defend the insured against any 'suit' seeking those damages" but has "no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply."  Id.  Naturally, the policy also includes dozens of pages of definitions, endorsements, exclusions, and warranties fleshing out the scope of Atain's obligations and the kinds of damage the policy covers.  The Court will address those provisions as they become relevant.

---

[3] The authorship of this second application is contested, but both parties seem to agree that someone associated with Chenault filled out and submitted the application.  See Pls.' RFA Resps. ¶ 17; Pls.' Mem. of P. & A. in Opp'n to Atain's Mot. for Final Summ. J. & in Supp. of Pls.' Cross-Mot. for Partial Summ. J. [ECF No. 54] ("Pls.' Mem.") at 18; Atain's Sur-Reply in Resp. to Ragimov's Mem. of Law in Supp. of Summ. J. & in Opp'n to Atain's Mot. for Summ. J. ("Def.'s Sur-Reply") [ECF No. 60] at 8.  For present purposes, that is good enough for the Court.

[4] The Court will cite the Atain Policy as "Def.'s Ex. H," but plaintiffs have agreed that this document "is a true and correct copy of the Policy at issue in this Lawsuit."  Pls.' RFA Resps. ¶ 16.

## II.   **The Underlying Suits**

With the Atain Policy in place, the Ragimov Plaintiffs set to work flipping the 3644 Property, in part by hiring Abel Romero d/b/a Romero Contracting as general contractor.  Compl. ¶ 24; see also Def.'s Ex. C [ECF No. 45-3] (contract between 3644 LLC and Abel Romero dated Dec. 2, 2016).  Suffice it to say, the work did not go smoothly.  On July 30, 2017, vandals broke into the property and stole a significant amount of copper plumbing, causing water to flood the basements of the 3644 Property and of Mamie Preston's adjoining home at 3642 13th Street ("the Preston Property").  See Ragimov Decl. ¶ 40.  Then, on August 10, 2017, "there was an unanticipated problem with the portion of the work [Romero] w[as] performing involving the Property foundation and walls," Compl. ¶ 29, causing the building's foundation to shift and damaging the two adjacent homes, the Preston Property and the Arguetas' home at 3646 13th Street (the "Argueta Property").  The August 10 incident was so serious that emergency personnel responded to the scene, Compl. ¶ 29, and, per Preston's eventual lawsuit, the "Fire Marshal, dressed in full gear, ordered [Preston and her family] to evacuate immediately" due to "an imminent threat of gas explosion and collapse of her property," Def.'s Ex. F ¶ 78 [ECF No. 45-6] (Preston's complaint).

On March 8, 2018, the Arguetas filed a lawsuit in D.C. Superior Court against Mr. Ragimov, 3644 LLC, Abel Romero, and Romero Contracting for negligence, seeking $350,000 in damages.[5]  See generally Def.'s Ex. G [ECF No. 45-7] (the Arguetas' amended complaint, dated September 24, 2018); Def.'s Statement of Undisputed Material Facts [ECF No. 44] ("Def.'s

---

[5] Cristobal Argueta died during the pendency of this litigation, and his estate has been substituted as a party in this case.  See Def.'s Suggestion of Death & Mot. to Substitute Parties [ECF No. 40]; Min. Order, June 18, 2021.

SUMF") ¶¶ 24–31.[6]  They allege that the damage to their house was so serious that the District of Columbia declared it unfit for habitation, forcing the Arguetas to move out.  Id. at ¶ 7, 16–19.  On March 7, 2019, Mamie Preston also filed suit against Ragimov, Romero, and their associated entities, seeking $1.8 million in damages for a variety of contractual, tort, property, and statutory claims relating to the defendants' conduct at the 3644 Property.  See Def.'s Ex. F; Def.'s SUMF ¶¶ 10–23.

The Ragimov Plaintiffs repeatedly notified Atain about the Preston and Argueta Suits, demanding that Atain defend them.  See Compl. ¶¶ 34, 36; Def.'s Answer, Affirmative Defenses, and Countercl. to Pls.' Compl. [ECF No. 13] ¶¶ 34, 36 (admitting plaintiff's allegations);[7] Pls.' Ex. L (letter from plaintiffs' attorney notifying Atain of the Preston Suit and requesting that Atain defend and indemnify Ragimov).  Each time, Atain denied coverage, refusing to defend the Ragimov Plaintiffs in the Preston and Argueta Suits for the same reasons it has presented in this litigation.  See Pls.' Ex. M at 1 (letter from Atain dated July 31, 2019, denying coverage for Preston Suit and referencing four previous letters relating to coverage).

## III.   The Instant Suit

On September 11, 2019, the Ragimov Plaintiffs filed the present action in D.C. Superior Court against Atain, alleging that Atain is in breach of the policy by refusing to defend plaintiffs in the Preston and Argueta Suits.  See Compl. ¶¶ 38–44.  Plaintiffs also sued Chenault and Burns & Wilcox for negligence in their preparation of the application for the Atain Policy.  Compl. ¶¶ 45–

---

[6] Atain's statement of undisputed material facts is a segment of its motion for summary judgment, spanning pages 4–19 of the motion.  See Def.'s Mot. for Final Summ. J. & Incorporated Mem. of L. [ECF No. 44].  To distinguish the statement of material facts from Atain's memorandum of law, the Court will cite the latter as "Def.'s SUMF" using paragraph numbers, while citing Atain's memorandum of law as "Def.'s Mot." and using page numbers.

[7] Atain's answer and its counterclaim are paginated separately—this citation refers the answer portion of this document.  Henceforth, when citing the answer, the Court will use the form "Def.'s Answer ¶ #," and when citing the counterclaim, the Court will use the form "Def.'s Countercl. ¶ #."  Both citation forms will refer to the document at ECF No. 13.

60.  Plaintiffs seek a declaration that Atain has a duty to defend plaintiffs in the Preston and Argueta Suits or, if Atain does not have such a duty, a declaration that Chenault and/or Burns & Wilcox were negligent (along with concomitant monetary damages).  See id. at 11–13.  Two weeks later, Atain removed the suit to this Court pursuant to 28 U.S.C. § 1441(a).[8]

On October 25, 2019, Atain answered plaintiffs' complaint and asserted several counterclaims against the Ragimov Plaintiffs, seeking its own declaration that it has no duty to defend plaintiffs in the Preston and Argueta Suits.  See generally Def.'s Countercl. ¶¶ 79–182.  In addition, Atain joined Preston and the Arguetas as counterclaim defendants so that they would be bound by this Court's determination of Atain's obligations.  See id. ¶ 13.  Over the next several months, every party filed its answer with the exception of Mamie Preston, who never filed an appearance in this lawsuit or answered Atain's counterclaim.  Accordingly, the clerk entered a default as to Preston on July 17, 2020.  See Default [ECF No. 32].

In a Scheduling Order dated July 20, 2020, the Court bifurcated discovery and summary judgment proceedings into two phases.  See Scheduling Order [ECF No. 33].  Because plaintiffs' negligence claims against Chenault and Burns & Wilcox are contingent on the inapplicability of the Atain Policy, the Court decided to determine Atain's obligations with respect to the Preston and Argueta Suits first (Phase One).  Then, only if the Court concluded that the Atain Policy does not apply to the Preston and Argueta Suits, discovery would proceed as to plaintiffs' negligence claims against Chenault and Burns & Wilcox (Phase Two).  See id. ¶¶ 2, 9.

Discovery in Phase One closed on May 31, 2021, and on June 30, Atain moved for a default judgment as to Mamie Preston and for summary judgment as to the other counterclaim defendants.

---

[8] No party has challenged the propriety of Atain's removal or this Court's diversity jurisdiction in this case, see 28 U.S.C. § 1332(a): plaintiffs are all citizens of Virginia; defendants are citizens of Michigan (Atain and Burns & Wilcox) and Maryland (Chenault); and plaintiffs seek damages in excess of $75,000.  See Compl. at 2, 13.

See generally Def.'s Mot. for Final Summ. J. & Incorporated Mem. of L. [ECF No. 44] ("Def.'s Mot."); Def.'s Mot. for Default Final J. Against Mamie Preston and Incorporated Mem. of L. [ECF No. 46] ("Def.'s Mot. for Default J.").  Plaintiffs sought and received an extension of time until August 20 to file their cross-motion for partial summary judgment as to Atain, see Min. Order., Aug. 3, 2021, but then proceeded to blow past that deadline by more than two weeks, finally filing a motion for leave to late-file their cross-motion on September 9, 2021, see Mot. for Leave to Late-File Pls.' Opp'n to Mot. for Summ J. on Countercl. and Mot. for Summ. J. [ECF No. 48].  The Court granted this motion, setting a new due date for the following Monday, September 13, 2021, and admonishing plaintiffs' counsel to "take all reasonable steps to ensure that future filings with this court are prepared and submitted in a timely fashion," Min. Order, Sept. 10, 2021.  Come the 13th, plaintiffs filed a motion, statement of material facts, and exhibits, but they failed to include a memorandum of law.  See Pls.' Cross-Mot. for Partial Summ. J. Against Def. [ECF No. 49]; Pls.' Resp. to Def.'s Undisputed Material Facts [ECF No. 49-1] ("Pls.' SMF").

Atain then timely filed a reply brief arguing that, by failing to respond substantively to its legal arguments, plaintiffs had "waived any opposition to Atain's motion for summary judgment." Def.'s Mem. of L. in Opp'n to Pls.' Cross-Mot. for Summ. J. & Reply in Supp. of Def.'s Mot. [ECF No. 52] ("Def.'s Reply") at 2.  On October 6, nine days after Atain submitted its reply brief and twenty-three days after it was due, plaintiffs submitted their memorandum of law in support of their cross-motion for summary judgment.  See Mem. of P. & A. in Opp'n to Def.'s Mot. & in Supp. of Pls.' Cross-Mot. for Partial Summ J. Against Def. [ECF No. 54] ("Pls.' Mem."); see also Mot. for Leave to Late-File Mem. of P. & A. Nunc Pro Tunc [ECF No. 56] ("Pls.' Mot. for Leave to Late-File").

Atain promptly moved to strike, pointing out that the filing was well out of time and that, by submitting their brief after Atain's reply, plaintiffs had deprived Atain of a chance to respond to their legal arguments.  See generally Def.'s Objections and Mot. to Strike Pls.' Mem. [ECF No. 55] ("Def.'s Mot. to Strike").  For his part, plaintiffs' counsel explained that he thought he had submitted the brief on September 13 but that something must have gone wrong with the electronic filing system, an error he discovered only upon reading Atain's reply brief on October 6.  See Mem. of P. & A. in Opp'n to Def.'s Mot. to Strike [ECF No. 57] ¶¶ 3–6.  To his credit, plaintiff's counsel "acknowledge[d] . . . that Atain was disadvantaged by the missing Memorandum" and noted that he "would support[] an opportunity by Atain to respond in substance to [the Memorandum's] arguments."  Id. ¶ 12.  The Court then granted Atain leave to file a sur-reply while reserving judgment on the motion to strike, Min. Order, Nov. 5, 2021, and Atain timely filed that sur-reply on November 15, 2021, see Def.'s Sur-Reply in Resp. to Pls.' Mem. [ECF No. 60]. Then, on December 14, 2021, the Court requested supplemental briefing from the parties regarding the scope of the Atain Policy's coverage, Min. Order, Dec. 14, 2021—both parties submitted their supplemental memoranda in a timely manner, see Def.'s Suppl. Mem. in Supp. of Summ. J. [ECF No. 61] ("Def.'s Suppl. Mem."); Pls.' Resp. to Def.'s Suppl. Br. [ECF No. 62] ("Pls.' Suppl. Mem.").

Thus, briefing on all pending motions is complete, and the parties' cross-motions for summary judgment, Atain's motion for default judgment as to Mamie Preston, and Atain's motion to strike are ripe for decision.

## Analysis

**I.   Atain's Motion to Strike**

The repeated failure of plaintiff's counsel to make timely submissions to the Court, including after the Court specifically ordered him to "take all reasonable steps to ensure that future

filings . . . are prepared and submitted in a timely fashion," Min. Order, Sept. 10, 2021, is unacceptable.  Plaintiffs were late on a filing for all but four days of the period between August 20 and October 6, a remarkable 43 days of delinquency that not only delayed this already-long-running litigation but caused real prejudice to Atain.  Even accepting counsel's explanations, his behavior was sloppy and unprofessional.  "CM/ECF ate my motion" simply does not cut it as an excuse in federal court.

That said, adversarial briefing is not just a prerogative of the parties—it is a crucial component of fair and reasoned decisionmaking.  The resolution of this case would be seriously hindered, perhaps even to Atain's disadvantage, if the Court were forced to guess at plaintiffs' arguments based solely on its statement of material facts.  And the Court is extremely reluctant to let a violation of deadlines—even an egregious one—decide a case, as Atain urges here.  See Def.'s Reply at 2–3 (arguing that plaintiffs had "waived any opposition to Atain's motion for summary judgment" and urging the Court to grant summary judgment on that basis).[9]  Especially since the Court would have granted summary judgment to Atain regardless of whether it considered plaintiffs' late memorandum, the Court will deny Atain's motion to strike and grant plaintiffs' motion for leave to late-file their memorandum.

---

[9] Indeed, even if the Court felt that counsel's conduct was so serious as to warrant punitive dismissal of his client's lawsuit, a court may not impose such a penalty without exhausting lesser sanctions, see Gardner v. United States, 211 F.3d 1305, 1309 (D.C. Cir. 2000), or directly notifying the attorney's client that his case is at risk of dismissal, Winkey v. Campanale, Civ. A. No. 08-2171 (RBW), 2013 WL 12407214, at *2 (D.D.C. May 30, 2013) (citing Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1078 (D.C. Cir. 1986)).

## II.     The Parties' Cross-Motions for Summary Judgment

The Court now turns to the parties' cross-motions for summary judgment and the gravamen of Phase One of this litigation: does Atain have a duty under the Atain Policy to defend and indemnify the Ragimov Plaintiffs with respect to the Preston and Argueta Suits?[10]

### A.     Legal Standard

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining whether a genuine dispute of material fact exists sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Summary judgment, then, is appropriate if the non-movant fails to offer 'evidence on which the jury could reasonably find for the non-movant.'" Shorter v. Architect of Capitol, Civ. A. No. 18-2124 (JDB), 2020 WL 5016888, at *4 (D.D.C. Aug. 25, 2020) (cleaned up) (quoting Anderson, 477 U.S. at 252).

In the District of Columbia,[11] "an insurer's duty to defend is determined by comparing the complaint [in the underlying suit] with the policy."  Stevens v. United Gen. Title Ins. Co., 801

---

[10] Defendant's motion for a default judgment as to Mamie Preston is substantively identical to its arguments for summary judgment as to the other counterclaim defendants, and the relief Atain seeks in the two motions is the same: a declaration that Atain has no duty to defend or indemnify the Ragimov Plaintiffs in the Preston Suit.  See Def.'s Mot. for Default J. at 26; Def.'s Countercl. at 55; Def.'s Mot. at 33; Def.'s Proposed Order [ECF No. 44-1] at 2–3.  And since Ms. Preston remains a party to this lawsuit despite her default, she will be bound by a declaratory judgment issued as a result of summary judgment, just as she would by a declaration stemming from a default judgment.  As the Court will grant summary judgment to Atain and issue a declaration adjudicating its obligations under the Atain Policy, the Court will deny defendant's motion for a default judgment as moot, on the understanding that its declaratory judgment will bind Ms. Preston on the same terms as the other counterclaim-defendants.

[11] The parties appear to agree that D.C. law applies in this diversity case: Atain argues so explicitly, see Def.'s Mot. at 20, while plaintiffs exclusively rely on decisions applying D.C. law, see Pls.' Mem. at 9–11.  In any event, the

A.2d 61, 66 n.4 (D.C. 2002) (cleaned up and citation omitted).[12]   Under this so-called "eight

corners" rule, "[i]f the facts alleged in the complaint would give rise to liability under the policy

if proven, the insurer must defend the insured." Id. (cleaned up and citation omitted); accord, e.g.,

Carlyle Inv. Mgmt. L.L.C. v. Ace Am. Ins. Co., 131 A.3d 886, 896 (D.C. 2016).  "As a general

principle, the focus 'must always be on the allegations of the complaint,'" Travelers Indem. Co.

of Conn. v. Univ. Hall Condo. Owners Ass'n, Civ. A. No. 18-2551 (JDB), 2020 WL 1508907, at

*3 (D.D.C. Mar. 30, 2020) (quoting Am. Cont'l Ins. Co. v. Pooya, 666 A.2d 1193, 1998 (D.C.

1995)), and "the obligation to defend is not affected by facts ascertained before suit, or developed

in the process of litigation, or by the ultimate outcome of the suit," Fogg v. Fid. Nat'l Title Ins.

Co., 89 A.3d 510, 514–15 (D.C. 2014) (cleaned up) (quoting Stevens, 801 A.2d at 67).

 An insurance policy is a contract, so it is interpreted "according to contract principles."

Sec. Title Guar. Corp. of Balt. v. 915 Decatur St NW, LLC, 427 F. Supp. 3d 1, 9 (D.D.C. 2019)

(quoting Stevens, 801 A.2d at 66).  "Where insurance contract language is not ambiguous,

summary judgment is appropriate because a written contract duly signed and executed speaks for

itself and binds the parties without the necessity of extrinsic evidence." Id. (quoting Stevens, 801

A.2d at 66).  Moreover, "a contract is not ambiguous merely because the parties do not agree over

its meaning, and courts are enjoined not to create ambiguity where none exists." Carlyle Inv.

Mgmt., 131 A.3d at 895 (quoting Tillery v. D.C. Cont. Appeals Bd., 912 A.2d 1169, 1177 (D.C.

---

Court agrees that the District of Columbia's modified interest analysis approach to choice of law, see generally Chi. Ins. Co. v. Paulson & Nace, PLLC, 37 F. Supp. 3d 281, 290–92 (D.D.C. 2014), aff'd, 783 F.3d 897 (D.C. Cir. 2015), requires the application of D.C. law here.  Even assuming a conflict between D.C. law and Virginia or Michigan law (the law of the domiciles of plaintiffs and defendant, respectively), the District has the more substantial interest in this case, which involves an insurance policy exclusively covering D.C. property, a dispute over coverage for losses suffered in D.C., and Atain's potential duty to defend in lawsuits currently pending in D.C. Superior Court.

 [12] Because "the duty to defend is broader and more extensive than the duty to indemnify," Stevens, 801 A.2d at 67, then a fortiori "[i]f there is no duty to defend, there is no duty to indemnify," Carlyle Inv. Mgmt., 131 A.2d at 896 (quoting Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 75 (1st Cir. 2007)).  The Court will thus confine its analysis to Atain's duty to defend.

2006)).  But "[w]here an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception." Carlyle Inv. Mgmt., 131 A.3d at 896–97 (quoting Cameron v. USAA Prop. & Cas. Ins. Co., 733 A.2d 965, 969 (D.C. 1999)).

### B.  Analysis

The Court begins, as it must, with the "eight corners" (or in this case, twelve corners) of the complaints in the Preston and Argueta Suits and the Atain Policy.

#### i.  The Twelve Corners

##### 1.  The Argueta Suit

The operative complaint in the Argueta Suit was filed on September 24th, 2018,[13] and was submitted to this Court by Atain as Def.'s Ex. G.  The complaint named Todd Ragimov, 3644 LLC, Abel Romero, and Romero Construction as defendants and sought $350,000 in damages for the defendants' "negligence and gross negligence" in their work on the 3644 Property.  Def.'s Ex. G. at 5–6.  Specifically, the Arguetas alleged that, "[a]s a result of . . . defendants['] negligence during construction, the building in which Plaintiffs lived was not safe for habitation," Def.'s Ex. G. ¶ 16; therefore, defendants "caused damage to Plaintiffs by interrupting their ability to use their property as a house & concomitant expenses," id. ¶ 19 (cleaned up).  Negligence is the only cause of action alleged in the Argueta Suit, and the alleged injuries are related exclusively to the damage

---

[13] The Arguetas initially filed suit on March 8, 2018, but the Superior Court granted the defendants' motion to dismiss without prejudice, requiring the Arguetas to file a revised complaint in September.  See Pls.' Ex. K (printout of the docket in the Argueta Suit).  Thus, the September 24 complaint is the appropriate focus for the present inquiry.

inflicted on the Arguetas' home by the actions by Ragimov and Romero at the 3644 Property.  See id. ¶¶ 17–20.

### 2.  The Preston Suit

The Preston Suit commenced on March 11, 2019, with all three Ragimov Plaintiffs, a variety of other associated LLCs, Abel Romero, and Romero Construction named as defendants. Preston's complaint, submitted by Atain as Def.'s Ex. F, included thirteen causes of action that run the gamut of the first-year law school curriculum.  First, she alleged the existence and breach of two contracts between herself and Mr. Ragimov, one in which Mr. Ragimov promised to pay for any damage to Preston's home caused by his work at the 3644 Property and another, more specific promise to reimburse her for costs related to the flooding of her basement on July 30, 2017.  Def.'s Ex. F ¶¶ 91–113.  Preston also brought actions for promissory estoppel and fraudulent misrepresentation related to the formation of these two contracts.  Id. ¶¶ 114–36  Second, like the Arguetas, Preston sued in tort, alleging negligence in the defendants' work on the 3644 Property, negligent supervision and hiring, and infliction of emotional distress relating to Preston's forced evacuation by the Fire Marshal.  Id. ¶¶ 137–45, 160–61, 174–79.  Third, having covered contracts and torts, Preston moved to property law, alleging trespass, private nuisance, impeding Preston's easement on the wall shared by her home and the 3644 Property, and a "loss of lateral and subjacent support" on her property due to the defendants' work at the 3644 Property.  Id. ¶¶ 156–59, 162–68, 180–87.  Finally, she alleged violations of D.C. Municipal Regulations and the D.C. Consumer Protection Procedures Act.  Id. ¶¶ 146–55, 169–73.[14]

---

[14] The Superior Court dismissed several of these counts on a motion for summary judgment, see Pls.' Mem at 8–9, but under the eight corners rule, the Court must consider only the facts alleged in the complaint in order to determine if Atain has a duty to defend in the Preston Suit.  Which claims are still live is irrelevant to Atain's duty to defend.

3.  <u>The Atain Policy</u>

The Court now arrives at the final four corners to consider: the insurance policy issued by Atain to Todd Ragimov.  Coverage A of the Atain Policy states that Atain "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that the insurer "will have the right and duty to defend the insured against any 'suit' seeking those damages" but <u>not</u> in "any 'suit' seeking damages . . . to which this insurance does not apply."  Def.'s Ex. H at 45.  The policy defines a "suit" as "a civil proceeding in which damages because of bodily injury, property damage or personal and advertising injury to which this insurance applies are alleged."  <u>Id.</u> at 60 (internal quotation marks omitted).  "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" as well as "[l]oss of use of tangible property that is not physically injured," <u>id.</u> at 59, while "bodily injury" refers to "bodily injury, sickness or disease sustained by a person," <u>id.</u> at 57.[15]  Thus, by the terms of Coverage A alone, Atain has a duty to defend the insured in any civil proceeding in which a plaintiff seeks damages related to injury to property, loss of use of property, or bodily injury to which the policy applies.

But the policy does not apply to all property damage or bodily injury.  Rather, it includes a "Limitation of Coverage to Designated Premises" (the "Designated Premises Endorsement"), which stipulates that the policy applies neither to "property damage . . . occurring on any premises other than the designated premises" nor to damage "that occurs away from the designated premises caused by supervision, hiring, training, organizing or any other activities on or from the designated premises."  Def.'s Ex. H at 39.  Following a series of cross-references, the reader eventually arrives

---

[15] The policy's terms also require that the damage be "caused by an 'occurrence' that takes place in the 'coverage territory.'"  Def.'s Ex. H. at 45.  But the "coverage territory" is defined as the entire United States and Canada, <u>id.</u> at 57, while "occurrence" simply means "an accident," <u>id.</u> at 59—as such, this prerequisite for coverage is obviously satisfied here.

at a "Schedule of Locations," which lists as "designated premises" eight properties around the District of Columbia, including "3644 13th St NW, Washington, DC 20010." Id. at 9.  Neither the Argueta Property nor the Preston Property are listed as "designated premises." Id.  In addition, the Atain Policy does not cover damage to "property you [the insured] own" or to "[t]hat particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it." Id. at 48–49.

ii.   Application

Having examined the relevant documents, the Court must compare them to determine if "the allegations of the complaint state a cause of action within the coverage of the policy." Carlyle Inv. Mgmt., 131 A.2d at 896 (quoting Stevens, 801 A.2d at 66 n.5).  In the language of this case: if the Argueta and Preston Suits allege property damage to which the Atain policy applies, then Atain has a duty to defend the Ragimov Plaintiffs in the Preston and Argueta Suits.  If, however, the damage alleged in the Preston and Argueta Suits does not fall within the policy's coverage, then Atain has no duty to defend Ragimov in those suits.

The Preston and Argueta Suits undoubtedly seek "damages because of 'bodily injury' [or] 'property damage.'" Cf. Def.'s Ex. H at 60.  The Arguetas allege damages arising from the "physical injury" to their home and their "loss of use" of that property due to its condemnation by the city.  See Def.'s Ex. G ¶ 19; cf. Def.'s Ex. H at 59.  And, setting aside her contractual and statutory causes of action,[16] Preston raises essentially the same claim: the Ragimov Plaintiffs

---

[16] The policy's broad definition of "suit" allows the Court to disregard these claims, some of which are patently beyond the scope of the policy.  Cf. Def.'s Ex. H at 46 (excluding from coverage injuries "for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement").  So long as the Preston Suit is one in which "damages because of . . . property damage . . . are alleged"—regardless of what other claims are joined to that allegation—Atain's duty to defend is implicated.

caused property damage to her home due to their work on the 3644 Property.  See, e.g., Def.'s Ex. F ¶¶ 138–45.  These suits thus prima facie implicate Atain's duty to defend.

Atain raises many arguments and sub-arguments as to why it has no duty to defend plaintiffs in the Preston and Argueta Suits.  These include that Mr. Ragimov and his agent made material misrepresentations when applying for the policy, thereby violating the Policy's "Fraud and Misrepresentation Endorsement" and enabling Atain to rescind the policy, see Def.'s Mot. at 23–27; Def.'s Ex. H at 5; that Mr. Ragimov failed to keep the 3644 Property secured during the policy period—as suggested by the break-in on July 30, 2017—thereby violating the policy's "Secured Vacant Building Warranty," see Def.'s Mot. at 27–28; Def.'s Ex. H at 7; and that the named insured on the policy is "Todd Ragimov, etal," foreclosing coverage under the policy for Atel and 3644, Ragimov's associated LLCs, see Def.'s Mot. at 31–32; Def.'s Ex. H at 4.

But Atain needs only one argument to succeed.  So, rather than delve into these alternative arguments, the Court will decide this case on the most straightforward ground presented: the Atain Policy does not apply to the damage alleged in the Argueta and Preston Suits because neither the Argueta Property nor the Preston Property is a "designated premises" covered by the policy.  Just as the suits obviously claim property damage, they just as obviously allege damage only to the Preston and Argueta Properties.[17]  Since those properties are not "designated premises" under the Atain Policy, Def.'s Ex. H at 9, the policy does not apply to damage occurring there.  As a consequence, neither the Argueta or Preston Suits allege property damage "to which [the Atain

---

[17] To be sure, the specific cause of much of the damage to the Argueta and Preston Properties was damage to "party walls," which run along the property line and are shared between the 3644 Property and the Argueta and Preston properties.  One could thus theoretically understand the Argueta and Preston Suits as alleging property damage to the 3644 Property, which is, of course, a designated premises.  But even if plaintiffs had made that argument, but see Pls.' Mem. at 28, it would not succeed in light of Exclusion J(1), which precludes coverage for "[p]roperty damage to [p]roperty you own," Def.'s Ex. H at 48.

Policy] applies," and Atain accordingly has no duty to defend the Ragimov Plaintiffs in those suits.[18]

In response to this straightforward application of the Designated Premises Endorsement, plaintiffs attempt to distinguish between conduct occurring on the premises but causing injury elsewhere (as here) and injurious conduct that happens away from the designated premises altogether: "Were the Ragimov Parties seeking compensation for losses caused by their activities at remote worksites . . . , Atain might be correct [that the policy does not apply].  But where, as here, the Designated Premises . . . [was] indisputably both the location of activity and proximate cause of alleged injury and resultant liability, coverage is clearly included."  Pls.' Mem. at 26.  In other words, "[b]ecause the nexus of property damage alleged in the Preston and Argueta cases extends like falling dominoes from faulty underpinning work at the Insured Property," id., plaintiffs argue that the Atain Policy requires Atain to defend plaintiffs in the Preston and Argueta Suits.

But this argument flatly ignores the second clause of the Designated Premises Endorsement: "This insurance does not apply . . . to [damage] that occurs away from the designated premises caused by supervision, hiring, training, organizing or any other activities on or from the designated premises."  Def.'s Ex. H at 39.  In their supplemental brief, plaintiffs analogize this case to a negligently-maintained tree falling into a neighbor's driveway and damaging his new car, a situation plaintiffs assert would be covered by the tree-owner's

---

[18] The Court's conclusion on this point is bolstered by the fact that investigators with the District of Columbia Department of Insurance, Securities, and Banking ("DISB") reached the same conclusion.  When Atain first denied coverage with respect to the damage to the Preston Property, see Def.'s Ex. P [ECF No. 45-16] (letter from Atain dated August 29, 2017, relating to a claim for reimbursement by Ms. Preston), Ms. Preston filed a complaint with DISB regarding Atain's decision, see Def.'s Ex. Q [ECF No. 45-17] (letter from DISB to Ms. Preston dated Nov. 9, 2017).  After reviewing the Atain Policy, DISB's David Moore told Ms. Preston that "in their decision to deny this claim, Atain has . . . fulfilled the terms, provisions and obligations of the insurance agreement they issued" because "Mr. Ragimov did not purchase coverage for any damages that might be caused to outside areas of his home."  Id. at 1–2.

homeowner's insurance policy.  Pls.' Suppl. Mem. at 2–3.  While this analogy is apt enough, it does not help plaintiffs: if the hypothetical homeowner's insurance policy included a designated premises endorsement like the one in the Atain Policy, then the neighbor's damaged car, just like the Argueta and Preston Properties in this case, would fall outside the policy's ambit.  Indeed, while plaintiffs are correct that the cases cited by Atain enforcing similar endorsements did not deal with damage physically caused by activities occurring at the designated premises, see Def.'s Mot. at 28–29, those cases were actually closer than this one because the policies at issue were broader, explicitly covering damage "arising out of the . . . use of the [designated premises], and . . . operations necessary or incidental to those premises."  Nationwide Mut. Fire Ins. Co. v. Wilbon, 960 F. Supp. 2d 263, 266 (D.D.C. 2013).  So although plaintiffs might have had a winning argument under the terms of the policy in Wilbon, their "falling dominoes" theory of coverage simply cannot overcome the clear and unambiguous language of the Atain Policy's Designated Premises Endorsement.  Despite plaintiffs' assertion that "[n]o reasonable builder seeking third-party liability coverage would ever agree to a policy containing [an exclusion for injury originating from but extending beyond the Insured Premises]," Pls.' Suppl. Mem. at 3, the clear text of the Atain Policy demonstrates that Ragimov did precisely that.

Plaintiffs also briefly note that, if the Designated Premises Endorsement precludes coverage for damage suffered away from the 3644 Property and Exclusion J(1) precludes coverage for "[p]roperty damage to [p]roperty you own," Def.'s Ex. H at 48, then there isn't much left to be covered by the policy.  See Pls.' Mem. at 28 n.12 ("What, then, does the Atain Policy purport to insure?").  Under the so-called "illusory coverage doctrine," even an unambiguous policy may be deemed unenforceable if the coverage it provides is "non-existent or de minimis."  Silver v. Am. Safety Indem. Co., 31 F. Supp. 3d 140, 148 (D.D.C. 2014) (quoting Chase v. State Farm Fire &

Cas. Co., 780 A.2d 1123, 1131 (D.C. 2001)); see generally Ian Weiss, Comment, The Illusory Coverage Doctrine: A Critical Review, 166 U. Pa. L. Rev. 1545, 1548–55 (2018).  And at first glance, the Atain Policy does appear to raise questions about the illusoriness of its coverage, so much so that the Court requested supplemental briefing on the point.  See Min. Order, Dec. 14, 2021.

Having received the parties' responses, however, the Court is persuaded that the Atain Policy provides coverage that, while narrow, is neither non-existent nor de minimis.  In its supplemental memorandum, Atain explains that the Policy would, for example, cover a suit against Ragimov "for failure to maintain the premises, resulting in theft of, or damage to, a third party's property brought to the premises" or for bodily injury related to a slip-and-fall at the 3644 Property. Def.'s Suppl. Mem. at 2–3 ("Indeed, slip-and-fall exposures are the principal risk insured by a premises liability policy such as the Policy here.").  Upon independent review of the Policy, the Court agrees.  Exclusion J(1) precludes coverage only for "property damage" to the insured's property but does not limit coverage for "bodily injury" occurring on the premises.  Def.'s Ex. H at 48.  Nor does it apply to all property on the premises, leaving open the possibility of coverage for a third party's property, such as an automobile parked in the driveway or items brought by a realtor to stage the home.  See id.  The Court accordingly concludes that the Atain Policy's coverage is not so limited as to be unenforceable under the illusory coverage doctrine.

Atain has thus demonstrated that property damage to the Preston and Argueta Properties, even damage caused by "activities on or from the [3644 Property]," is not covered by the Atain Policy.  And since the policy "does not apply" to such damage, Atain has no duty to defend the Ragimov Plaintiffs in the Argueta and Preston Suits.  See Def.'s Ex. H at 45.  Even drawing all

inferences in favor of plaintiffs, the Court concludes that Atain is entitled to judgment as a matter of law with respect to its obligations under the Atain Policy.

## <u>Conclusion</u>

For the foregoing reasons, the Court will grant Atain's motion for summary judgment, deny the Ragimov Plaintiffs' cross-motion, and issue a declaratory judgment to the effect that (1) Atain has no obligation to defend or indemnify any of the Ragimov Plaintiffs with respect to the Preston or Argueta Suits; and (2) Atain has no obligation to pay the other counterclaim-defendants—Mamie Preston, Ofelia Argueta, and the Estate of Cristobal Argueta—for sums that any of the Ragimov Plaintiffs may become obligated to pay as a result of the Preston or Argueta Suits.  The Court will order the relevant parties to meet and confer and to submit a proposed declaratory judgment consistent with this memorandum opinion.  In addition, for the reasons explained above, the Court will deny Atain's motion to strike and grant plaintiffs' motion for leave to late-file (though that decision should not be construed as indicating approval of counsel's conduct).  The Court will also deny as moot Atain's motion for a default judgment as to Mamie Preston, on the understanding that, as a party to this action, she will be bound by the Court's declaratory judgment.

This opinion brings Phase One of this matter to a close.  The Court will therefore order the relevant parties to meet and confer and to submit a proposed schedule for Phase Two of the litigation.  An accompanying Order shall issue on this date.


$$\underline{\qquad\qquad /s/ \qquad\qquad}$$
JOHN D. BATES
United States District Judge

Dated: <u>January 12, 2022</u>